UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: JOHN W. FLISS, | ) | |
| *Debtor.* | ) ) ) | No. 17-CV-321 (consolidated with 17-cv-495) |
| ------------------------------------------------- | ) ) | |
| GENERATION CAPITAL I, LLC, | ) ) | Judge Thomas M. Durkin |
| *Appellant,* | ) ) | |
| v. | ) ) | |
| JOHN W. FLISS | ) ) | |
| *Appellee.* | ) | |

## MEMORANDUM OPINION AND ORDER

Appellant Generation Capital I, LLC ("Generation Capital")[1] has appealed the bankruptcy court's order (1) disallowing its claim in its entirety as a discovery sanction, and (2) the subsequent confirmation of debtor John W. Fliss's Chapter 13 Plan. This Court has jurisdiction pursuant to 28 U.S.C § 158 because the case involves the appeal of a final judgment entered in the bankruptcy court. For the following reasons, the Court vacates the bankruptcy court's judgment and remands the case for further proceedings.

---

[1] There are two entities referenced in this opinion with similar names. The entity that filed a bankruptcy claim and is the appellant here is Generation Capital I, LLC, which is referred to as "Generation Capital." A separate entity, Generation Capital II, LLC will be referred to as "Generation II." Collectively, the entities will be referred to as the "Generation Capital entities."

## Background[2]

These consolidated appeals stem from Generation Capital's bankruptcy claim based on a state court judgment (the "Claim") against Fliss's bankruptcy estate. During the bankruptcy proceedings, the bankruptcy court disallowed the Claim because Generation Capital failed to comply with discovery orders. As a result, the bankruptcy court held there were no objections to Fliss's Chapter 13 Plan (the "Plan") and confirmed the Plan without hearing Generation Capital's Claim on its merits. Generation Capital now argues that the bankruptcy court committed an error of law or abused its discretion in disallowing the Claim in its entirety as a discovery sanction, and that the bankruptcy court committed an error of law or abused its discretion when it confirmed the Plan.

**A. The State Court Judgment**

On or about April 2009, a promissory note was executed by Duraguard Services, LLC and Polymeric Solutions, LLC in favor of Barrington Bank and Trust Company, N.A. to borrow $200,000 (the "loan"). The note was personally guaranteed by Fliss, Mark E. Barr, Lawrence E. Wojciak, and The Sherry R. Wojciak Revocable Trust dated February 16, 1999 (the "Trust"). In September 2011, Barrington Bank filed a complaint and confession of judgment against the borrowers Duraguard and Polymeric and against all of the individual guarantors (the "litigation"). A judgment

---

[2] The following facts are drawn from the appendices filed by the parties in case no. 17-cv-321. R. 20-1, 25, 26. The Court will use references to the appendices filed by Fliss, R. 25 and R. 26, which are a more complete record of the bankruptcy proceedings, and will cite them according to their appendix citation (*i.e.* A\_\_). Where necessary, the Court will refer to R. 20-1, the appendix filed by Generation Capital.

of confession was entered against all of the defendants in that case—against Fliss, Barr, Wojciak, and the Trust for $204,797.70, against Duraguard for $208,733.08, and against Polymeric for $205,950.55. In February 2012, Barrington Bank and Generation Capital entered into a note sale and assignment agreement (the "note agreement"). The note agreement transferred all of Barrington's rights under the loan and the litigation to Generation Capital in exchange for payment of $240,000. Evidence of a wire transfer in that amount from Generation Capital II, LLC ("Generation II") on behalf of Duraguard was introduced in the state court proceedings. R. 20-1 at A-22.

Also in February 2012, Barrington Bank, Wojciak, and the Trust entered into a settlement agreement (the "settlement agreement"). The settlement agreement provided that in exchange for payment of $240,000 by Wojciak and/or the Trust to Barrington Bank, Barrington Bank would transfer all of its rights under the loan and the litigation to Generation Capital, and Barrington Bank, Wojciak, and the Trust would release each other from liability on any claims. *Id*. at A-23. There was no evidence in the state court record that Wojciak or the Trust ever made this payment to Barrington Bank. *Id*. at A-24.

In May 2012, pursuant to the note agreement, the state court substituted Generation Capital for Barrington Bank. Generation Capital subsequently filed a motion to turnover assets against Fliss and Barr in the litigation. In November 2014, Fliss and Barr filed a motion to determine the amount owed pursuant to the judgment. In that motion, Fliss and Barr argued that the judgment in the litigation

3

had been extinguished by the payment of $240,000 from Generation Capital pursuant to the settlement agreement. But because no evidence had been presented that the payment from Wojciak and/or the Trust had been made to Barrington Bank, the state court held that the settlement agreement was not satisfied, the litigation was not settled, and the release of liability between Barrington Bank, the Trust, and Wojciak was void. *Id.* (opinion entered May 12, 2015). As a result, the state court held that Barrington Bank could sell the rights pursuant to the note agreement to Generation Capital, and Generation Capital had a live cause of action against Fliss, Barr, Wojciak, and the Trust for the outstanding judgment amount of $204,797.70. *Id.* at A-25.

**B. The Bankruptcy Proceedings**

On August 28, 2015, Fliss filed a voluntary Chapter 13 bankruptcy petition. The Chapter 13 Plan stated that Generation Capital had a claim against Fliss's estate secured by the "memorandum of judgment recorded against real property," but that the collateral "either has no value or [ ] is fully encumbered by liens with higher priority," causing the Claim to be treated as unsecured. A-19 at 3. On November 1, 2015, Generation Capital objected to the Plan on the grounds that: (1) the Plan did not adequately provide for Generation Capital's secured claim pursuant to 11 U.S.C § 1325(a)(5), *et seq.;* and (2) pursuant to 11 U.S.C § 1322(b)(2). Generation Capital filed a timely proof of claim on December 31, 2015.

On July 24, 2016, Fliss filed an objection to the Claim and made the same arguments he made in the state court motion for determination. Specifically, he

4

argued that Generation Capital's Claim had been released by the payment of the settlement amount to Barrington Bank. A-25. He also argued that Generation Capital did not own the Claim, and that the Claim was overstated. *Id*. Like in the state court motion, Fliss argued that the settlement agreement payoff was made on behalf of Duraguard and Polymeric and thus extinguished any claims Barrington Bank had against them, as well as against their guarantors (*i.e.*, Fliss, Barr, Wojciak, and the Trust).

Fliss further argued that Generation Capital is an alter ego of Wojciak and the Trust. He noted that although the note agreement provided for the assignment of the loan and litigation to Generation Capital, the note agreement was executed by Wojciak, and the only evidence of payment was from an account in the name of Generation II. Fliss thus questioned who actually owned the Claim—Generation II, Wojciak, or Generation Capital. Again, as in the state court motion, Fliss argued that because the payment was made, the payment released the obligation of all of the guarantors as well. In response, Generation Capital argued that the objection should be denied because the state court judgment was not subject to challenge based on res judicata, the Rooker-Feldman Doctrine,[3] and full faith and credit.

On October 25, 2016, the parties appeared for a hearing on Fliss's objection to the Claim. The bankruptcy court indicated there was a question as to whether the Claim had been paid and that it intended to conduct an evidentiary hearing. A-136 at 10. The bankruptcy court ordered the parties to exchange witness lists, exhibit

---

[3] *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923) and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

5

lists, and exhibits on or before November 21, 2016. *Id*. at 11. The bankruptcy court also set a status for November 22, 2016 to determine whether discovery was needed. *Id*.

On November 21, 2016 and November 22, 2016, Fliss issued discovery requests to Generation Capital and indicated to the bankruptcy court that there was a question as to whether the Claim had been paid and that he thought the Generation Capital entities were alter egos of Wojciak and the Trust. A-149 at 3. Fliss's attorney represented that Generation Capital and the related entities had not produced any operating agreements, bank statements, or tax returns. *Id*. at 4. The bankruptcy court told Generation Capital's attorney that "if you don't produce [the documents], [the court would] sustain the objection." *Id*. The bankruptcy court ordered Generation Capital to produce the documents by December 9, 2016, over Generation Capital's representation to the bankruptcy court that it had received the requests the day before, that there were 16 requests, and that it had consistently been Generation Capital's position that Fliss's objection was barred by the state court judgment under either res judicata or the Rooker-Feldman principle. *Id*. at 5, 7.

Generation Capital failed to produce the documents on December 9, 2016, allegedly because its counsel were in a trial that ended up taking several days longer than anticipated. A-158 at 4. Fliss did not contact Generation Capital or file a motion to compel. Instead, on December 12, 2016, Fliss filed a motion to disallow the Claim as a sanction for Generation Capital's failure to produce documents. A-

6

109. Generation Capital responded to the requests by December 14, 2016. A-158 at 4. During argument on the motion to disallow on December 19, 2016, Generation Capital argued that the document requests asked for documents that did not belong to Generation Capital, and that Generation Capital produced hundreds of pages of documents in response to the requests. *Id*. at 5-6.

The bankruptcy court ordered Generation Capital to produce information regarding the ownership of the Generation Capital entities by December 21, 2016. *Id*. The bankruptcy court also reminded Generation Capital's counsel, Mr. Sheldon, that the information had to be disclosed. Mr. Sheldon responded that the information the bankruptcy court and Fliss were looking for had already been produced:

> THE COURT: I just remembered, this isn't the first time I've made it clear that this information has to be disclosed. I remember being incredulous, and nobody knows where what is this, $300,000 payment?
>
> MR. SCHECHTER: 240,000.
>
> THE COURT: 240, and nobody knows --
>
> MR. SHELDON: Which we provided proof of.
>
> THE COURT: --  who made it, and where it is.
>
> MR. SHELDON: Which we provided proof of, Your Honor.
>
> THE COURT: But you got to convince me you're making sense.
>
> MR. SHELDON: Judge, you haven't seen the documents, respectfully.
>
> THE COURT: He hasn't seen them because you won't give them to him.
>
> MR. SHELDON: No, you haven't seen them. Mr. Schechter has documents. Respectfully, Your Honor, everything Mr. Schechter argues seems to be taken as the gospel.
>
> THE COURT: It doesn't, we just want the information. We don't know what –

7

> MR. SHELDON: He has information, Your Honor. He has hundreds of pages about this.
>
> THE COURT: We'll talk about it Wednesday. I want to -- you tell them who these other entities are, who their principals are, and we'll see whether your response will remain in good faith.

*Id*. at 7-8.

On December 21, 2016, the parties appeared again before the bankruptcy court. Fliss's counsel represented that Generation Capital had not fully complied with the production requests because it had not produced operating agreements of the allegedly related entities, tax returns, bank statements, or anything related to the Trust. A-167 at 4. Fliss's counsel received the ownership information of the entities at issue.[4] *Id*. at 5. The bankruptcy court then ordered Generation Capital to turn over its bank records, stating that otherwise it would disallow the claim. *Id*. at 14. Fliss's counsel asked the bankruptcy court if he could also have bank records from non-parties Generation II and the Trust. *Id*. at 15. Over objection, the bankruptcy court ordered Generation Capital, as well as non-parties Lawrence Wojciak, his wife Sherry, his son Matthew, Generation II, and the Trust to produce bank records, financial account records, and tax returns from April 2009 to December 2016—all by December 30, 2016. A-131.

On January 5, 2017, the parties appeared before the bankruptcy court. Generation Capital's counsel indicated that it had filed two affidavits with the court that indicated that all available documents had been produced by December 30,

---

[4] Fliss's counsel was aware that the Generation Capital entities were connected with the Wojciak family before these discovery hearings. The state court judgment entered in 2015 expressly indicated that Lawrence Wojciak was the manager of Generation Capital. R. 20-1 at A-22.

8

2016, and that the Wojciaks had requested additional documents from their bank regarding the Generation Capital entities. A-186 at 2; A-Supp. 1; A-Supp. 3. The affidavits also attested to the ownership of the Generation Capital entities and to the payment made from Generation II to Barrington Bank. A-Supp. 3 at ¶ 12. When the bankruptcy court questioned why the full records had not been produced, Generation Capital's counsel argued that the Wojciaks were given approximately one week to produce seven years of bank statements. A-186 at 8. The bankruptcy court responded to that assertion by stating, "The bank can do it. Pay them whatever, a $15 fee, and they can pull it up on a computer. . . . This is the age of digital information. All sorts of information are available instantly. That's our new claim to fame. . . . I didn't say your client is a liar. I'm saying I'm not convinced that the information is not available." *Id*. at 9. The bankruptcy court and Generation Capital's counsel then had the following exchange:

> MR. SHELDON: Why would we withhold it knowing, Your Honor, we would come here today –
>
> THE COURT: I'm just a judge. I can't read somebody's mind.
>
> MR. SHELDON: Let's think about this logically, Your Honor. Knowing – considering every time come here, I'm on the defensive, even though we have a state court judgment.
>
> THE COURT: You're not on the defensive.
>
> MR. SHELDON: Every time.
>
> THE COURT: You have full, unlimited opportunity to cooperate with court orders.
>
> MR. SHELDON: And that's what we're trying to do. So think about this logically. Mrs. Wojciak, according to Your Honor, is going to make this statement knowing that I'm going to come to court today and either order –
>
> THE COURT: What do you mean "according to Your Honor"? What does that mean "according to Your Honor"?

> MR. SHELDON: I'm asking -- under what you just said, I'm asking you to consider this logically. Mrs. Wojciak is going to make this statement
>
> THE COURT: I'm not logical?
>
> MR. SHELDON: No. I'm asking Your Honor to think about this logically from our perspective. Mrs. Wojciak is going to put this in an affidavit that she made this request knowing that we're going to come to court today and, again, be on the defensive, and Your Honor is either going to disallow our claim or order us to produce these documents. So why lie about that? We will produce the documents as soon as we get them from Charles Schwab.
>
> THE COURT: I didn't say anybody was lying.
>
> MR. SHELDON: You just said it's a digital age, and Charles Schwab should have given them to us immediately.
>
> THE COURT: You haven't given me any information that Charles Schwab could not or would not produce all the information.
>
> MR. SHELDON: It says in the affidavit attached –
>
> THE COURT: I have to hear that from Schwab.
>
> MR. SHELDON: So I should get an affidavit from Schwab?
>
> THE COURT: I'm not telling you what to do. Anything further?
>
> MR. SHELDON: If we could just have some reasonable timeframe to produce seven years of tax -- I'm sorry -- of bank statements. That's all I'm asking, Your Honor.

*Id*. at 9-11.

Fliss's counsel informed the bankruptcy court that Generation Capital had produced two pages of a 16 page statement for the month that allegedly included the wire transfer between Barrington Bank and Generation II. *Id*. at 12. Mr. Sheldon responded that that was the first time Fliss's counsel addressed the issue with him. *Id*. at 13. The bankruptcy court then asked Fliss's counsel, "Mr. Schechter, what are you asking me to do?" to which he responded, "I'm asking you to disallow the proof of claim filed by Generation Capital I, LLC, as a sanction for failure to comply with the court's order." A-186 at 13. The bankruptcy court granted

10

the motion. *Id*. The bankruptcy court made no effort to verify the truth of Fliss's counsel's representations or determine whether Generation Capital had in fact produced the relevant documents.

Generation Capital's counsel asked for a rationale for the bankruptcy court's disallowance of the Claim based on the state court judgment. The bankruptcy court responded that it "[didn't] know what a state court judge did or said." Mr. Sheldon continued to press the court for a rationale:

> MR. SHELDON: You have [the judgment].
>
> THE COURT: You filed a proof of claim. We want to know what the history of payment is.
>
> MR. SHELDON: And you've seen it.
>
> THE COURT: I have a duty to figure out whether the debtor has a right to some kind of credit or offset for some prior payment.
>
> MR. SHELDON: Your Honor, you have the judgment. You have three years of litigation in state court.
>
> THE COURT: I do. I have the judgment. But I've also been told there is a transfer. You won't give me the information about the transfer.
>
> MR. SHELDON: We've given the transfer information.
>
> THE COURT: I'm not –
>
> MR. SHELDON: That's fine. We'll appeal. Thank you.

*Id*. at 14.

The bankruptcy court entered an order disallowing Generation Capital's Claim as a sanction for its failure to comply with the bankruptcy court's order. A-132. On January 12, 2017, the bankruptcy court held the confirmation hearing. Because Generation Capital's Claim was disallowed and no other objections were pending, the bankruptcy court confirmed the Chapter 13 Plan. A-135; A-201 at 3.

Analysis

A. Standard of Review

"District courts sit as appellate courts when hearing appeals from bankruptcy courts." *Hijjawi v. Five N. Wabash Condo. Ass'n*, 491 B.R. 876, 880 (N.D. Ill. 2013). The bankruptcy court's factual findings are scrutinized for clear error, while its legal conclusions are reviewed *de novo. Kovacs v. United States*, 739 F.3d 1020, 1023 (7th Cir. 2014). To the extent that the Bankruptcy Code commits a decision to the discretion of the bankruptcy court, that decision is reviewed for an abuse of discretion. *In re Dvorkin Holdings, LLC*, 547 B.R. 880, 886 (N.D. Ill. 2016); *e360 Insight, Inc. v. The Spamhaus Project*, 658 F.3d 637, 642 (7th Cir. 2011). "In general terms, a court abuses its discretion when its decision is premised on an incorrect legal principle or a clearly erroneous factual finding, or when the record contains no evidence on which the court rationally could have relied." *In re KMart Corp.*, 381 F.3d 709, 713 (7th Cir. 2004). The entry of sanctions pursuant to Federal Rule of Civil Procedure Rule 37 is reviewed for abuse of discretion. *In re Thomas Consol. Indus., Inc.*, 456 F.3d 719, 724 (7th Cir. 2006).

**B. The bankruptcy court abused its discretion when it disallowed Generation Capital's Claim without a finding of willfulness, bad faith, or fault.**

Federal Rule of Civil Procedure 37(b)(2)(A)[5] authorizes a range of sanctions, including the dismissal of a proceeding, for a party's failure to comply with the court's discovery order. Sanctions are generally intended to serve the following

---

[5] *See also* Fed. R. Bankr. P. 7037 (rendering Fed. R. Civ. P. 37 applicable in adversary proceedings).

purposes: (1) amelioration of prejudice; (2) punishment; and/or (3) deterrence. *In re KMart Corp.*, 371 B.R. 823, 840 (Bankr. N.D. Ill. 2007). Courts have broad discretion to select the appropriate sanction for discovery violations in light of the unique factual circumstances of the case. *Id*. But sanctions must be proportionate to the offending conduct. *Id*. A dismissal with prejudice deprives a party of a hearing on the merits of its claim, and accordingly is a "harsh remedy that should be reserved for the most egregious situations," where there is evidence of willfulness, bad faith, or fault. *See Ramirez v. T&H Lemont, Inc.*, 845 F.3d 772, 776 (7th Cir. 2016), *cert. denied*, 138 S. Ct. 116 (2017). Although the standards for willfulness, bad faith, or fault vary, the Seventh Circuit has held that all of them require more than "mere mistake or carelessness" or an inability by a party to comply. *Id*.

The bankruptcy court abused its discretion when it dismissed Generation Capital's Claim without an explicit finding that Generation Capital's non-compliance with the bankruptcy court's orders was willful, in bad faith, or with fault. A-186; *see also* A-132 (making no findings of willfulness, bad faith, or intent in its order imposing sanctions and disallowing the Claim). Nor can the Court here infer willfulness, bad faith, or fault from the sanction order itself. *See In re Thomas Consol. Indus., Inc.,* 456 F.3d at 724 (the Seventh Circuit "strongly encourage[s] courts to make this finding explicitly," but has held that reviewing courts may infer it, if necessary, from the sanction order itself).

Fliss argues that even though the bankruptcy court did not explicitly state that Generation Capital's conduct evidenced willfulness, bad faith, or fault, the

13

record supports that finding. R 24 at 14. The Court disagrees. Fliss served his first discovery request on Generation Capital on November 21, 2016. Generation Capital was given until December 9, 2016—less than three weeks, despite the Thanksgiving holiday—to respond to 16 discovery requests. On December 21, 2016, the bankruptcy court ordered Generation Capital to produce seven years of records of information related to the Generation Capital entities, the Wojciaks, and the Trust, by December 30, 2016. This nine-day period included the Christmas holiday. The Wojciaks filed affidavits on December 30, 2016, indicating that they had produced the documents they had in their possession and had requested the remaining documents. The bankruptcy court disregarded those affidavits and instead relied only on representations made by Fliss's counsel.[6] The bankruptcy court made no effort to verify the truth of Fliss's representations, even after Mr. Sheldon informed the bankruptcy court that there were disputes as to what information had been produced. Generation Capital's conduct does not rise to the level required to find willfulness or bad faith warranting a dismissal sanction. *Long v. Steepro*, 213 F.3d 983, 987 (7th Cir. 2000) (willfulness and bad faith require intentional or reckless conduct).

---

[6] Generation Capital argues that Fliss failed to comply with its discovery obligations to meet and confer with counsel regarding disputes. R. 20 at 13. The record indicates Fliss's counsel often would raise issues with the bankruptcy court before allowing Generation Capital's counsel a chance to remedy the issue. For example, Fliss's counsel did not contact Generation Capital before filing the motion to disallow, nor did he inform Generation Capital that certain documents were not received or that pages were missing before representing to the bankruptcy court that Generation Capital had failed to comply. *See* A-186 at 13. It appears that these matters could have been resolved without court intervention through simple meet and confers.

Nor can the Court find Generation Capital was at fault for its non-compliance. Fault suggests objectively unreasonable behavior—it does not include conduct that would be classified as a mere mistake or slight error in judgment. *Id*. The record here does not evidence fault, but rather an inability by Generation Capital to comply with the bankruptcy court's short discovery production timeline given the extent of the document production requested, especially from non-parties.

Fliss cites to a number of cases that he claims support his position that Generation Capital's conduct amounted to willfulness, bad faith, or fault. Many of these cases do not remotely resemble the circumstances here. *See Ramirez*, 845 F.3d at 782 (witness tampering warranted dismissal sanction); *Wellness Int'l Network, Ltd. v. Sharif*, 727 F.3d 751, 780 (7th Cir. 2013), *rev'd on other grounds*, 135 S. Ct. 1932 (2015) (engaging in a five-year pattern of dilatory tactics to avoid discovery obligations warranted dismissal sanction); *In re Thomas Consol. Indus., Inc.,* 456 F.3d at 725 (a party's constant lies, non-responsive and inadequate answers, and the blatant disregard of court orders were more than sufficient to demonstrate the bad faith finding that justified dismissal); *Flextronics Int'l, USA, Inc. v. Sparkling Drink Sys. Innovation Ctr. Ltd.*, 230 F. Supp. 3d 896, 912-914 (N.D. Ill. 2017) (dismissal warranted after a finding of perjury and fabrication of evidence).

*In re Golant*, 239 F.3d 931 (7th Cir. 2001) is perhaps the most analogous case Fliss cites. There, the court twice ordered the debtor to comply with the production order and warned him that a further failure to comply would result in possible sanctions. *Id*. at 937. But in *Golant*, the debtor outright refused to produce

15

information regarding his financial dealings and resources—information that was paramount to the administration of a fair bankruptcy proceeding. Unlike here, the debtor gave no reason for his failure to produce the records, instead stating, "it is unknown where the rest of them are, but, again, the record is unclear as to what happened to the rest." *Id*. Even then, the court held an evidentiary hearing to determine the debtor's failure to comply before imposing a Rule 37 sanction, giving him ample opportunity to present his side of the story. *Id*. at 934, 938. Here, on the other hand, Generation Capital provided reasons for its inability to produce the financial documents through affidavits, but the bankruptcy court gave them little weight, instead relying solely on Fliss's counsel's representations without any additional inquiry to verify their truth.

### C. The bankruptcy court abused its discretion by failing to consider whether lesser sanctions would be appropriate.

Even without "a clear record of delay, contumacious conduct or prior failed sanctions," a court can apply the sanction of dismissal as long as it first considers and explains why lesser sanctions would be inappropriate. *See Long,* 213 F.3d at 986; *Rice v. City of Chicago*, 333 F.3d 780, 784 (7th Cir. 2003) (sanctions should be proportionate to the circumstances surrounding a party's failure to comply). For instance, in *In re Wolf*, 566 B.R. 233 (Bankr. N.D. Ill. 2017), which Fliss cites, the court found it appropriate to dismiss the case because the debtors had consistently refused to comply with the court's orders compelling discovery and had ignored the court's order ordering them to pay attorney's fees as a sanction for their failure to comply. *Id*. at 236. The court noted that despite the lesser sanctions of attorney's

fees, the debtors had continued to defy the court by failing to turn over the required documents. The record here, however, does not reveal that the bankruptcy court gave any consideration to alternative, lesser sanctions. In fact, it appears the bankruptcy court was inclined to disallow the Claim from the very first hearing (A-136 at 9), and made its rulings based on that initial presumption. It never considered imposing lesser sanctions such as monetary sanctions before imposing the harsh sanction of dismissal. And it appeared to give little consideration to the affidavits filed by the Wojciaks or even the state court judgment.[7]

Other courts have imposed less severe sanctions for much worse conduct. *See e360 Insight,* 658 F.3d at 644 (affirming decision of district court to impose monetary sanctions for a party's repeated failure to appear for deposition and provide answers to discovery); *Cohn v. Guaranteed Rate, Inc.*, 318 F.RD. 350, 356 (N.D. Ill. 2016) (refusing to dismiss case even after a party destroyed unfavorable evidence by deleting emails because "dismissal [was] not commensurate with the harm implicated"); *United Consumers Club, Inc. v. Prime Time Mktg. Mgmt. Inc.,* 271 F.R.D. 487, 502 (N.D. Ind. 2010) (refusing to dismiss because lesser sanctions could prove equally effective after repeated failures to produce discovery, evasive deposition testimony, vague responses to discovery requests, and noncompliance

---

[7] Notably, the state court noted that no evidence was presented of a payment from Wojciak or the Trust to Barrington Bank. There is no indication from the record that Fliss asked for those documents in the state court but was refused. Indeed, Fliss's counsel admitted to having documents showing the payment from Generation II to Barrington Bank, which is the payment that validated the note sale. A-167 at 9 ("[t]he documents . . . that I have had in my possession show a wire transfer from an account in the name of Generation Capital II, LLC to Bank of Barrington on behalf of Duraguard and Polymeric.").

17

with two motions to compel); *In re E.C. Ernst, Inc.,* 26 B.R. 576, 578 (Bankr. S.D.N.Y. 1983) (finding that dismissal was not warranted when there had not been a "total failure of discovery"). Unlike in these cases, there is no evidence the bankruptcy court attempted to impose lesser sanctions and that those lesser sanctions were ignored.

Finally, the dismissal did not serve the purposes that sanctions often intend to ameliorate. There is no indication Fliss would have been prejudiced by waiting a few more weeks to receive the bank records or that the parties were on a tight timeline. Further, it is unclear how the dismissal sanction could serve the purpose of punishment or deterrence after Generation Capital repeatedly represented to the bankruptcy court through both affidavits and oral argument that the Wojciaks did not have the records in their possession. The record instead indicates an inability of Generation Capital to comply with the bankruptcy court's discovery order, despite clear attempts to do so on a tight timeline, during holidays, and with requests contingent on actions of non-parties.

The bankruptcy court abused its discretion by ordering the harsh remedy of dismissal of Generation Capital's Claim without a finding of willfulness, bad faith, or fault. This Court cannot infer such a finding based on the record. Accordingly, the bankruptcy court's order disallowing Generation Capital's Claim is vacated and remanded.

### D. The bankruptcy court abused its discretion when it confirmed Fliss's Chapter 13 Plan.

The bankruptcy court confirmed Fliss's Chapter 13 Plan after finding there were no objections to the Plan because the only claim, Generation Capital's Claim, was disallowed:

> MR. SCHECHTER: ... And the only other objection pending was the objection of Generation Capital I, but since you disallowed their claim, I think they have no standing to prosecute that.
>
> . . .
>
> THE COURT: Resolved January -- it shouldn't even be on the docket.

A-201 at 2-3. The bankruptcy court then confirmed the Chapter 13 Plan. Because the Court finds the bankruptcy court abused its discretion in disallowing Generation Capital's Claim, it also finds the Chapter 13 Plan should not have been confirmed without consideration of the Claim. *See* 11 U.S.C. § 502 (a claim is deemed allowed unless a party in interest objects; if an objection is made, the court shall determine, after notice and hearing, whether the claim should be disallowed and the amount of such claim); Fed. R. Bankr. P. 3015(f) (allowing courts to confirm plans if no objection was timely filed and the plan was proposed in good faith). The confirmation of the Plan is vacated.

### Conclusion

For the foregoing reasons, the bankruptcy court's decision disallowing Generation Capital's Claim and confirming Fliss's Chapter 13 Plan is vacated, and the case is remanded to the bankruptcy court.

ENTERED:

/s/ Thomas M. Durkin
_____

Honorable Thomas M. Durkin
United States District Judge

Dated: March 30, 2018